**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

DIANE S. PRESTON,

Plaintiff,

v.

JULIE L. SUMSTAD; PARK NICOLLET CLINIC; ASTRAZENECA AB; ASTRAZENECA PHARMACEUTICALS LP; and BRISTOL-MYERS SQUIBB CO.,

Defendants.

Case No. 20-CV-2103 (NEB/DTS)

ORDER GRANTING MOTION TO REMAND

---

Plaintiff Diane Preston sued Julie Sumstad and the Park Nicollet Clinic (collectively, the "Medical Defendants"), as well as AstraZeneca AB, AstraZeneca Pharmaceuticals LP, and Bristol-Myers Squibb Co. (collectively, the "Pharmaceutical Defendants") in state court. The Pharmaceutical Defendants removed to federal court on the basis of diversity jurisdiction, claiming that the non-diverse Medical Defendants were fraudulently joined or fraudulently misjoined. Preston now moves to remand to state court. For the reasons that follow, the Court grants Preston's motion.

**BACKGROUND**

Preston suffers from Type 2 diabetes. (ECF No. 1-3 ("Am. Compl.") ¶ 39.) Sumstad, a nurse practitioner who works for the Park Nicollet Clinic, prescribed her Farxiga, a diabetes medication. (*Id.* ¶¶ 2, 13, 40.) Preston alleges that Farxiga caused her to develop

Fournier's gangrene[1] on and around her genital area. (*Id.* ¶ 45.) As a result, Preston underwent emergency surgery. (*Id.* ¶ 46.)

Preston alleges that the Pharmaceutical Defendants concealed known risks associated with Farxiga, specifically the increased risk of necrotizing fasciitis. (*E.g.*, *id.* ¶¶ 25–28.) She brings claims against the Pharmaceutical Defendants for negligence, violation of Minnesota's consumer protection statutes, consumer fraud, unlawful trade practices, breach of express and implied warranties, and strict product liability for failure to warn and design defects. (*Id.* ¶¶ 66–132.) In addition, Preston claims that the Medical Defendants were negligent by failing to disclose the risks of Farxiga and by failing to monitor her for risks associated with Farxiga. (*Id.* ¶¶ 62–65.)

Preston originally filed this suit in state court against only the Medical Defendants; she later amended her complaint to add the Pharmaceutical Defendants. (Am. Compl.; *see also* ECF No. 1-1 (Preston's original Complaint).) The Medical Defendants destroy complete diversity, and so the Pharmaceutical Defendants removed to federal court on the basis of diversity of citizenship and claimed the Medical Defendants were fraudulently joined or fraudulently misjoined. (ECF No. 1.) Preston then brought this Motion to Remand. (ECF No. 16.)

---

[1] Fournier's gangrene is a "form of necrotizing fasciitis of the genital/perianal/gluteal regions." (Am. Compl. ¶ 26.) Necrotizing fasciitis is a bacterial infection that can lead to serious complications or death. *Necrotizing Fasciitis: All You Need to Know*, Centers for Disease Control and Prevention (Dec. 31, 2019), https://www.cdc.gov/groupastrep/diseases-public/necrotizing-fasciitis.html (last accessed Mar. 23, 2021).

## ANALYSIS

### I. Removal and Subject Matter Jurisdiction

A case may be removed from state court to federal court if it could have originally been filed in federal court. 28 U.S.C. § 1441; *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1226 (8th Cir. 2015). Generally, that means that a civil case filed in state court may be removed if the parties are completely diverse and the amount in controversy is more than $75,000, or if the case presents a federal question. *See* 28 U.S.C. §§ 1331–32. Neither party argues that this case presents a federal question, so diversity is the only possible basis for removal. Complete diversity exists when "no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). The amount in controversy must also exceed $75,000, but the parties agree that this requirement is satisfied. 28 U.S.C. § 1332(a); (ECF No. 23 at 5 (explaining that Preston does not argue that the amount in controversy is less than the requisite amount).) The only question, then, is whether the Medical Defendants are properly joined.

### II. Improper Joinder

Improper joinder[2] occurs when a plaintiff files a "frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." *Filla v.*

---

[2] The Court uses the term "improper joinder" rather than "fraudulent joinder" because it better reflects the nature of the doctrine in the absence of allegations of deceptive behavior. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc)

*Norfolk S. Ry.*, 336 F.3d 806, 809 (8th Cir. 2003). A defendant is improperly joined if "there exists no reasonable basis in fact and law supporting a claim against the resident defendant[]." *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006) (quoting *Filla*, 336 F.3d at 810). On the other hand, if the plaintiff has made out a colorable claim against the resident defendant, there is no improper joinder, and the case should not be remanded. *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010). This standard is different from dismissal under Rule 12(b)(6), and it is that difference that drives the Court's decision in this case. In the Eighth Circuit, to establish improper joinder, the removing party "must 'do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion,'" and a court should not focus on the artfulness of the plaintiff's pleadings. *Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011) (quoting *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 980 (2011)). Any doubts should be resolved in favor of remand. *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007).

Under this standard, and emphasizing that doubts favor remand, the Pharmaceutical Defendants have not borne their burden of establishing that the Medical Defendants were improperly joined. The sole claim Preston brings against the Medical

---

(adopting the term "improper joinder" as being more consistent with the statutory language than the term "fraudulent joinder"); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 n.9 (7th Cir. 2009) (noting that the term "fraudulent joinder" is "a bit of a misnomer—the doctrine requires neither fraud nor joinder").

Defendants—medical negligence—requires the Medical Defendants to have known about Farxiga's risks. Under Minnesota law, when risks are associated with a certain treatment, the physician may have a duty to disclose those risks to the patient. *Kingsley v. Pinto*, No. A10-1197, 2011 WL 1743840, at *2 (Minn. Ct. App. May 9, 2011) (citing *Cornfeldt v. Tongen*, 262 N.W.2d 684, 699 (Minn. 1977)). But a physician cannot disclose risks associated with a treatment if she is unaware of those risks. *Cornfeldt*, 262 N.W.2d at 699.

Applying this law, the issue boils down to whether there is any "reasonable basis in fact" that the Medical Defendants knew of the risks associated with Farxiga before prescribing it to Preston. The Amended Complaint itself offers no such basis. Preston instead alleges, over and over again, that the Pharmaceutical Defendants knew, but did not disclose, Farxiga's risks. (*E.g.*, Am. Compl. ¶¶ 27–29, 32.) Preston offers no similar allegation against the Medical Defendants. But that does not mean that there is no colorable claim here.

The viability of Preston's claims rests on the unresolved factual issue of Sumstad's knowledge. Although speculation about Sumstad's knowledge of Farxiga's risks will not satisfy Preston's burden of proof at later stages of litigation, at the motion to remand stage, the question is only whether "state law might impose liability" on the Medical Defendants. *Filla*, 336 F.3d at 810. And the presence of this factual issue "counsels *against* a finding of fraudulent joinder." *Goade v. Medtronic, Inc.*, No. 13-5123-CV-SW-ODS, 2013

WL 6237853, at *3 (W.D. Mo. Dec. 3, 2013) (emphasis original); *see also In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*, No. 13-CV-1811 (DWF/FLN), 2013 WL 6511855, at *2 (D. Minn. Dec. 12, 2013) (noting that, at an early stage in the proceedings, "fact issues preclude a finding that there is no basis for liability on the part of the [removing defendants]," even when the plaintiff had not alleged any facts to support a claim against the non-diverse defendants).

The question of fact is not the only unresolved issue that warrants remanding this case; there is also an unresolved question of law regarding whether the Medical Defendants owed Preston a duty *after* prescribing Farxiga to Preston. Under Minnesota law, the elements of a medical malpractice claim are that: (1) the defendant owed a duty to the plaintiff to act with the applicable standard of care; (2) the defendant departed from that standard of care; and (3) the departure caused the plaintiff injury. *See Smits v. Park Nicollet Health Servs.*, A20-711, 2021 WL 560728, at *5, --- N.W.2d ---- (Minn. Ct. App. Feb. 16, 2021) (citing *Becker v. Mayo Found.*, 737 N.W.2d 200, 216 (Minn. 2007)) (noting that the duty element is "so enshrined" in this cause of action that it is sometimes not separately enumerated). There is a reasonable basis in law and fact to support the latter two elements: that the Medical Defendants departed from the applicable standard of care and caused Preston's injuries. The Medical Defendants did not warn Preston of the risks, even after the United States Food and Drug Administration ("FDA") issued a "drug

safety communication" about the risks. (Am. Compl. ¶ 50; *see id.* ¶ 64.) And of course, Preston has alleged that Farxiga caused her to develop Fournier's gangrene. (*Id.* ¶ 45.)

It is less clear whether the Medical Defendants owed a duty to Preston after the FDA warning. A medical professional owes a duty to a patient when the harm was foreseeable. *Warren v. Dinter*, 926 N.W.2d 370, 377 (Minn. 2019). The harm must be "'objectively reasonable to expect,'" not merely "'within the realm of any conceivable possibility.'" *Id.* at 378 (quoting *Foss v. Kincade*, 766 N.W.2d 317, 322 (Minn. 2009)). The FDA issued its drug safety communication on August 29, 2018. (Am. Compl. ¶ 50.) Preston refilled her prescription twice after that. (*Id.* ¶ 42.) After the FDA communication, it may have been "objectively reasonable" for the Medical Defendants to expect that allowing Preston to refill her Farxiga prescription would cause her harm. *Warren*, 926 N.W.2d at 378. Apart from the prescription refills, state law may impose liability for the Medical Defendants' failure to notify Preston of the risks when it would have been foreseeable that, absent a warning, continuing to take Farxiga would cause her harm. *Cf. Becker*, 737 N.W.2d at 216 ("Once a physician undertakes to treat a patient, that physician owes the patient a duty to act with the required standard of skill and care."). Because Minnesota law may recognize a duty of care on these facts, there is a "reasonable basis for predicting that the state's law might impose liability against the [Medical] [D]efendant[s]," and so the Court will remand. *Filla*, 336 F.3d at 811.

In sum, when the claims against the non-diverse defendant are questionable, which they are here, the "'better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide.'" *Id.* (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)). Because there are factual and legal scenarios under which the Medical Defendants would be liable for medical malpractice, there is at least a doubt about the propriety of federal jurisdiction. The Court must resolve the doubt in favor of remanding the case to state court. *Junk*, 628 F.3d at 446.

**III. Fraudulent Misjoinder**

Nor are the Medical Defendants fraudulently misjoined. Fraudulent misjoinder is a separate legal doctrine from improper joinder, and occurs when a plaintiff, seeking to destroy complete diversity, joins a defendant in an action even though the Federal Rules of Civil Procedure would not permit joining that defendant. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620–21 (8th Cir. 2010). In other words, fraudulent misjoinder exists when two defendants or sets of defendants are joined in a single action, even though the claims against them are not based on the same transaction or occurrence or do not share common questions of law or fact. *See* Fed. R. Civ. P. 20(a)(2). Some courts limit application of this doctrine to instances where the misjoinder of disparate defendants is egregious. *E.g., Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Off. Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). The Eighth Circuit has

neither adopted nor rejected the fraudulent misjoinder doctrine, nor has it addressed whether the misjoinder must be egregious. *Prempro*, 591 F.3d at 622.

Even assuming that the Eighth Circuit would adopt the fraudulent misjoinder doctrine, it would not apply in this case. Whether the Medical Defendants were fraudulently joined depends on whether the claims against them and the Pharmaceutical Defendants: (1) arose out of the same transaction or occurrence; and (2) share common questions of law or fact. Fed. R. Civ. P. 20(a)(2).

The Eighth Circuit has interpreted "transaction" "very broad[ly]." *In re Prempro*, 591 F.3d at 622. Whether claims arise out of the same transaction depends on whether the events giving rise to the claims are "logically related." *Id.* (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). The claim against the Medical Defendants and the claims against the Pharmaceutical Defendants are logically related. The Pharmaceutical defendants developed, manufactured, and marketed, and the Medical Defendants prescribed, the drug that Preston alleges caused her injuries. Courts have routinely found that strict liability claims against pharmaceutical companies and medical malpractice claims against medical professionals arise from the same transaction. *E.g.*, *Jamison v. Purdue Pharm. Co.*, 251 F. Supp. 2d 1315, 1322–23 (S.D. Miss. 2003); *Crocker v. Allergan USA, Inc.*, No. 4:18 CV 1288 DDN, 2018 WL 7635923, at *5–6 (E.D. Mo. Dec. 7, 2018); *In re Fosamax Prods. Liab. Litig.*, No. 1:06-MD-1789 (JFK), 2008 WL 2940560, at *10 (S.D.N.Y. July 29, 2008); *Tinsley v. Streich*, 143 F. Supp. 3d 450, 460 (W.D. Va. 2015).

Second, and as discussed in more detail above, the claims against each of the defendants depend on common questions of fact. At minimum, the unresolved factual question of whether the Pharmaceutical Defendants warned the Medical Defendants of the risks will affect whether each group of defendants is liable. Whether Farxiga actually caused Preston's injuries will also be a critical issue in the resolution of her claims against both the Medical Defendants and the Pharmaceutical Defendants. Because the claims against each group of defendants arise from the same transaction and share common questions of fact, the two sets of defendants are not fraudulently misjoined.

**CONCLUSION**

Based on the foregoing and on all the files, records, and proceedings herein, Preston's motion to remand (ECF No. 16) is GRANTED. This matter is REMANDED to Minnesota District Court, Fourth Judicial District (Hennepin County), pursuant to 28 U.S.C. § 1447(c).

Dated: March 24, 2021

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge